*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* METHENY, Minors.

UNPUBLISHED
January 16, 2025
11:53 AM

Nos. 371386; 371387
Kalamazoo Circuit Court
Family Division
LC No. 2020-000174-NA

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

In this consolidated appeal,[1] respondent-father and respondent-mother appeal as of right the trial court order terminating their parental rights to the minor children, CM and HM. In Docket No. 371386, respondent-father challenges the trial court's termination of his parental rights under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), MCL 712A.19b(3)(h) (parent imprisoned for a period exceeding two years, such that the child will be deprived of a normal home), MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to the parent), and MCL 712A.19b(3)(*l*) (failure to rectify the conditions that led to a prior voluntary termination of parental rights). In Docket No. 371387, respondent-mother challenges the trial court's termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (j), and (*l*). For the reasons stated in this opinion, we affirm in both appeals.

## I. BACKGROUND

In July 2020, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over CM and HM, remove the children from respondents' care, and terminate respondents' parental rights. DHHS alleged that respondents had a substantial history of substance abuse that negatively impacted their ability to provide proper care and custody of the minor children. DHHS asserted that respondent-mother had her parental

---

[1] *In re Metheny Minors*, unpublished order of the Court of Appeals, entered June 26, 2024 (Docket Nos. 371386; 371387).

-1-

rights terminated to two children in 2009 because of substance abuse. And in 2010, both respondents had their parental rights terminated to another child because of substance abuse. In March 2018, respondents were substantiated for improper supervision stemming from substance abuse, and CM and HM were placed in foster care. The children were eventually returned to respondents' care. But DHHS alleged that glass pipes, a large quantity of methamphetamine, and a syringe were found in the family home, within reach of the children, in May 2020. There was also evidence suggesting that illegal drug distribution was occurring in the family home. Additionally, respondent-father appeared to be under the influence of methamphetamine while the children were home. DHHS further maintained that respondents engaged in verbal and physical altercations in the children's presence. Finally, DHHS alleged that respondents did not have stable housing. In July 2020, the trial court authorized the petition and ordered that the children be removed, finding that there was a substantial risk of harm if the children remained with respondents.

At the October 2020 pretrial hearing, respondents admitted that they had "a substantial history of substance abuse that negatively impact[s] their ability to provide proper care and custody of the minor children." The trial court accepted respondents' pleas, assumed jurisdiction over the children, and changed the goal to reunification. Respondents participated in parenting classes, substance-abuse counseling, and random drug screens. In January 2021, the trial court found that reasonable efforts had been made and that respondents had made progress. Accordingly, the court ordered that the children be returned to respondents' care with intensive home-based services in place.

In April 2021, respondent-father was jailed for third-degree criminal sexual conduct (CSC-III) charges involving a victim who was not respondent-mother or the children. Respondent-father remained incarcerated for the rest of this case.

Beginning in June 2021, respondent-mother intermittently tested positive on her drug screens, missed drug screens, and missed therapy appointments. In August 2021, respondent-mother was involved in a motor vehicle accident while under the influence of alcohol.[2] Between January and May 2022, respondent-mother missed 10 of her 22 random drug screens and tested positive four times. Between March and June 2022, respondent-mother missed 21 of her 34 random drug screens and she tested positive six times. Respondent-mother's housing became unstable and she was unable to maintain steady employment. She also was arrested on a warrant issued after missing a court date related to the accident, and was incarcerated for two weeks.

In June 2022, DHHS filed a supplemental petition requesting removal of the children. The trial court ordered that the children be placed with DHHS for care and supervision. The trial court ordered that respondent-mother's parenting time be supervised and that respondent-father's parenting time be in accordance with the Michigan Department of Corrections' and DHHS's policies.

---

[2] Her blood alcohol content was higher than 0.17%. Respondent-mother was involved in another accident in 2021, in which her blood alcohol content was 0.21%.

Because respondents made minimal progress over the next seven months, DHHS filed a supplemental petition requesting termination. Subsequently, respondent-mother participated in Family Treatment Court for approximately nine months before being unsuccessfully discharged for drinking alcohol. She was then discharged from a sober-living facility for noncompliance.

At the termination hearing, the caseworker provided testimony regarding respondent's lack of progress and explained that the barriers to reunification that existed at adjudication still existed at the time of the termination hearing. The trial court found that there was clear and convincing evidence that a statutory basis existed for terminating both respondents' parental rights, and that termination was in the children's best interests. Respondents now appeal.

## II. STATUTORY GROUNDS

Respondent-father argues that the trial court erred by finding statutory grounds to terminate his parental rights. We disagree.

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). In this case, the trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (h), (j), and (*l*). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] ha[s] not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), "despite time to make changes and the opportunity to take advantage of a variety of services[,]" *In re White*, 303 Mich App at 710 (cleaned up). Determining whether a respondent is likely to rectify the conditions leading to adjudication within a reasonable time requires consideration of both how long the parent will take to improve the conditions and how long the children can wait for the improvements. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). "A parent's failure

to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710.

It is undisputed that, at the time of termination, more than 182 days had elapsed since the initial disposition order was entered. Respondent-father had a long history of substance abuse— in 2010, his parental rights were terminated to another child because of substance abuse; in 2018, the children were removed because of substance-abuse and housing issues; and in 2020, the children were again removed because of substance-abuse issues. Moreover, in 2020, respondent-father: (1) was incarcerated for "possession of methamphetamine and/or a meth lab," and (2) admitted to using methamphetamine three to four times a week for about two years. Although respondent-father exhibited five months of clean drug screens before his incarceration in April 2021 for CSC-III, he had multiple positive drug screens during this case and he did not successfully complete any substance-abuse services before his incarceration. Respondent-father did participate in narcotics anonymous meetings while incarcerated; however, he lied about his participation for a three-month period before the caseworker found out and requested his reenrollment.

The trial court considered respondent-father's history of services and inability to maintain sobriety over the years. The court commended respondent-father for his short-term progress in the five months before he went to jail in April 2021, but stated that there was no guarantee that he was going to be able to maintain sobriety after his release from prison. At the time of the March 2024 termination hearing, respondent-father's earliest release date from prison was in April 2026. "[T]he Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App at 647. Considering the amount of time that had passed since the opening of this case, respondent-father's incarceration, his history of services, his inability to maintain sobriety over the years, and the children's ages, we are not left with a definite and firm conviction that the trial court clearly erred by terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*).

Because clear and convincing evidence supported termination under MCL 712A.19b(c)(*i*), we need not address whether the trial court properly found statutory grounds for termination under MCL 712A.19b(3)(c)(*ii*), (h), (j), and (*l*). See *In re Foster*, 285 Mich App at 633.[3]

---

[3] Nevertheless, having reviewed the record, we conclude that the trial court's findings under MCL 712A.19b(3)(c)(*ii*), MCL 712A.19b(3)(h), and MCL 712A.19b(3)(j) were supported by clear and convincing evidence and were not clearly erroneous. But the trial court clearly erred by terminating respondent-father's parental rights under MCL 712A.19b(3)(*l*) because substance abuse is not among the enumerated conditions listed under MCL 712A.19b(3)(*l*). Regardless, because the petitioner need only establish one statutory ground for termination of a respondent's parental rights, the trial court's error involving one statutory ground was harmless. See *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

### III. BEST INTERESTS

Respondent-father also argues that the trial court erred by finding that termination was in the children's best interests. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013).

Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The trial court may also consider a parent's substance abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

Respondent-father argues that termination was not in the children's best interests because he has a bond with the children, mostly complied with his case service plan, and demonstrated sobriety in the five months leading up to his incarceration. A preponderance of the evidence in the record supports that respondent-father has failed to address his substance abuse issues for well over a decade. Although respondent-father made short-term progress in the five months before he went to jail in April 2021, he had not successfully completed any substance-abuse classes or programs. The trial court acknowledged the bond the children had with respondent-father. But the court noted that this case began $3^1/_2$ years ago, the children were on their second removal for this case, the children had been removed from the home for 21 months since that second removal, and the children needed stability. The trial court determined that the children's need for permanence and stability outweighed any bond that may exist with respondent-father. The children cannot wait in limbo for positive changes to potentially manifest when respondent-father is released from prison, which, at the time of the termination hearing, was to be in April 2026 at the earliest. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent-father's parental rights was in the best interests of the children.

## IV. ADJUDICATION—FAILURE TO ADVISE OF APPELLATE RIGHTS

Respondent-mother argues that the trial court's assumption of jurisdiction over the children, and their removal from respondent-mother's care, should be overturned because the trial court failed to comply with MCR 3.971(B)(6) to (8), which required the trial court to advise respondent-mother of her right to appeal the trial court's decisions at the preliminary hearing. We disagree.

Because respondent-mother did not raise this matter in the trial court, it is not preserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Unpreserved claims and "adjudication errors raised after the trial court has terminated parental rights are reviewed for plain error." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9, 761 NW2d 253 (2008); see also *In re Ferranti*, 504 Mich at 29 ("the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings") (cleaned up). The party asserting plain error bears the burden of persuasion with respect to prejudice. *In re Pederson*, 331 Mich App at 463.

Respondent-mother's reliance on MCR 3.971(B) is misplaced. Respondent-mother cites the preliminary hearing transcript in support of her argument. MCR 3.971 governs the process of accepting a respondent's plea of admission or a plea of no contest.[4] Respondent-mother did not

---

[4] MCR 3.971 provides in pertinent part as follows:

> (A) General. A respondent may make a plea of admission or of no contest to the original allegations in the petition. The court has discretion to allow a respondent to enter a plea of admission or a plea of no contest to an amended petition. The plea may be taken at any time after the authorization of the petition, provided that the petitioner and the attorney for the child have been notified of a plea offer to an amended petition and have been given the opportunity to object before the plea is accepted.

> (B) Advice of Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:

> * * *

> (6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

offer a plea at the preliminary hearing. Accordingly, the trial court did not violate MCR 3.971(B)(6)-(8) by failing to advise respondent of her appellate rights at the preliminary hearing.

However, respondent-mother did offer a plea to the allegations in the petition at the pretrial hearing. And before accepting respondent-mother's plea and assuming jurisdiction over the children, the trial court fulfilled its obligations under MCR 3.971(B)(6) to (8) to advise respondent-mother of her right to appeal.

Respondent-mother's claim of error actually arises under MCR 3.965(B)(15), which provides that, "[i]f the court orders removal of the child from a parent's care or custody, the court shall advise the parent, guardian, or legal custodian of the right to appeal that action." It is undisputed that the trial court did not advise respondent-mother at the preliminary hearing of her right to appeal its decision to remove the children. Accordingly, respondent-mother has established plain error. See *Carines*, 460 Mich at 763.

But respondent-mother has not established that the error was outcome determinative. At the preliminary hearing, respondent-mother stipulated to probable cause to support the authorization of the petition "considering the history and that there was meth found in the home." Similarly, at the pretrial hearing, she pleaded that she had "a substantial history of substance abuse that negatively impacts [her] ability to properly care for [her] minor children including [CM] and [HM]." And although respondent-mother was advised at the pretrial hearing of her right "to challenge any errors in the adjudicatory process," in accordance with MCR 3.971(B)(6), she failed to exercise that right. Respondent-mother has not established how the outcome of the proceedings would have been different if the trial court complied with MCR 3.965(B)(15). See *Pederson*, 331 Mich App at 463 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (citation omitted). Accordingly, she has failed to carry her burden of demonstrating prejudice. See *Carines*, 460 Mich at 763.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C).